UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADRIAN MARCELO RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>SMART FOODS, INC. and<br>DANIEL MUNOZ,<br><br>Defendants. | Civ. No. 21-cv-12408-WJM-AME<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Adrian Marcelo Ramirez brings this putative collective action against his former employer Smart Foods, Inc. ("Smart Foods") and its owner Daniel Munoz (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a), *et seq.* ("NJWHL"), and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPL"). Before the Court is Defendants' motion for summary judgment (the "Motion"). For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.  FACTUAL BACKGROUND**[1]

Defendant Munoz created Smart Foods in 2003 and incorporated the company in New Jersey in 2005. DSOMF ¶¶ 10-11. Smart Foods imports food products from Argentina, Uruguay, and Paraguay, and distributes the products to retailers in the northeast United States. DSOMF ¶¶ 5-7. Plaintiff Ramirez performed work for Smart Foods beginning in or around 2004. DSOMF ¶ 13. Ramirez's duties at Smart Foods included making deliveries, conducting inventory, "customer care", and at least occasional accounting work. DSOMF ¶ 17, PSOMF ¶ 4. At least at the outset, Ramirez worked five or more days per week for Smart Foods, DSOMF ¶ 16, and was issued a company car, DSOMF ¶ 15.

According to the Defendants, Ramirez was an outside salesperson exempt from the overtime and wage requirements imposed by the FLSA. In support of their argument, Defendants submitted 104 pages of sales records which, according to Defendants, reflect sales commissions paid to Ramirez—sometimes directly, and sometimes through payments to Ramirez's wife, his

---

[1] The facts in this section are taken from the parties' statements of material facts and the exhibits attached thereto and are limited to those necessary for the resolution of Defendant's Motion. The Court "'view[s] the record and draw[s] inferences in a light most favorable to the non-moving party.'" *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011) (quoting *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). For ease of reference, the Court uses the abbreviations "PSOMF" for Plaintiff's Statement of Material Facts and "DSOMF" for Defendants' Statement of Material Facts.

1

daughter, or his wholly owned company AR Trader Corp. Mot. Ex. J at SF001-104 ("Sales Records"); DSOMF ¶¶ 22-24. The Sales Records reflect payments beginning in January of 2014 and ending in August of 2018. *See* Sales Records. Plaintiff denies that the Sales Records reflect commission payments made to him. Pl.'s Resp. to DSOMF ¶ 25. He has denied that he was an outside salesperson and argued that the majority of his work for Smart Foods was not sales related. PSOMF ¶¶ 1, 4-7.

Beginning on October 24, 2018, Ramirez and Munoz exchanged a series of WhatsApp messages.[2] Munoz wrote: "Hi Marcelo, I was surprised by what you told me yesterday. I hope you have something better. We'll talk about it on Saturday morning." Cert. Translation of Def.'s Ex. F, ECF No. 63-1, at 4 ("WhatsApp Transl."). Ramirez replied, "Hi, Saturday morning around 9 am and we'll talk. But, as I told you, I've already made a decision: I'm going to become independent." *Id.* Two days later, the pair exchanged several more messages to coordinate a meeting. Ramirez wrote "Hi, I'll stop by tomorrow around 9 am to confirm." WhatsApp Transl. at 6. After some coordination, Ramirez offered, "If you want, you can send the check to me by post and I'll come by another time. I'm going to start talking to clients so that they call the office; so that they can get organized." WhatsApp Transl. at 7. Munoz responded, "What are you going to do?" *Id.* Ramirez repeated, "become independent." *Id.* On November 2, 2018, Munoz wrote to Ramirez that "In a while, I'm going to give up the routes. After the Florida plan fell through, there were many things left to do, from sales supervision to all types of businesses. If you reconsider, let me know." WhatsApp Transl. at 9. Ramirez responded, "Hi, Thanks, I'll think about it." *Id.* In a final exchange in 2019,[3] Munoz and Ramirez discussed the degree to which their companies are competitive with each other, and Munoz remarked that "I never understood why you went over to Peruvian. What I did regret was losing a friend." WhatsApp Transl. at 12. Ramirez responded in part that "There are cycles that end and changes are necessary. Especially if we want to grow and in your space, that was not viable, so I decided the change would give me an opportunity." *Id.*

Defendants assert that these messages evidence the end of any employment relationship between Smart Foods and Ramirez in 2018. Plaintiff denies that he stopped working for Smart Foods in 2018. *See* Pl.'s Resp. to DSOMF ¶¶ 35, 37-41. In his deposition, Ramirez testified that he was employed by Smart Foods from in or around 2004 through July of 2020 continuously, with no break in employment. Ramirez Dep. 7:13-23. Ramirez similarly testified by declaration that

---

[2] Screenshots of the WhatsApp exchange were originally filed in their original Spanish-language form with no accompanying translation. *See* ECF No. 55-3. Pursuant to the Court's September 9, 2024 Letter Order, ECF No. 62, Defendant filed a certified translation on September 23, 2024, ECF No. 63. The Court permitted Plaintiff to respond to the certified translation to correct any inaccuracies as necessary, and Plaintiff did not submit any such response. *See* ECF Nos. 62, 64. In his Responses to Defendant's Statement of Material Facts, Plaintiff admitted that "the text message[s are] accurately portrayed". Pl.'s Resp. to DSOMF ¶¶ 35, 37-38.

[3] Two pages of Defendant's Exhibit F—both the translated and original versions—reflect different dates for the final WhatsApp exchange between Munoz and Ramirez. The first shows a message sent on August 9, 2019 and is partially cut off at the end. ECF No. 63-1 at 10; ECF No. 55-3 at 301. The following page shows the full version of the same message, but dated January 3, 2019. ECF No. 63-1 at 11; ECF No. 55-3 at 302. In light of the fact that Plaintiff has not challenged the authenticity of the exhibit, the Court assumes the disparity is the result of a technical error in the process of preparing the text messages for submission to the Court. The Court makes no determination regarding the date on which these messages were actually exchanged.

"I did not quit or leave the company in the fall of 2018," Ramirez Decl. ¶ 9, and that "I worked for Defendants until 2020," *id.* ¶ 10.

## II. PROCEDURAL BACKGROUND

On June 10, 2021, Plaintiff filed the operative complaint against Defendants advancing four causes of action: failure to pay overtime compensation as required by the FLSA, 29 U.S.C. § 207(a)(1); failure to pay overtime compensation as required by the NJWHL, N.J.S.A. 34:11-56a(4); minimum wage violations under the NJWHL, N.J.S.A. 34:11-56a(4); and failure to timely pay wages under the NJWPL, N.J.S.A. 34:11-4.2, 4.3.[4] ECF No. 1. Discovery concluded on April 8, 2024. ECF No. 49. Defendants filed the instant Motion on July 12, 2024, arguing that Plaintiff's FLSA claim is barred by the applicable statute of limitations and, alternatively, that Plaintiff was properly classified as an outside sales representative not subject to the FLSA's overtime protections. ECF No. 55. Defendants further argue that if the Court granted summary judgment as to Plaintiff's FLSA claim, then it should decline to retain pendent jurisdiction over Plaintiff's state law claims.

## III. LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party bears the initial burden of establishing that there is no genuine dispute as to any material fact. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). "If the moving party meets its burden, the burden then shifts to the non-moving party to 'come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts.'" *Cannon v. Commc'n Components, Inc.*, No. 2:20-CV-01626 (WJM), 2022 WL 4300247, at *2 (D.N.J. Sept. 19, 2022) (quoting *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011)) (emphasis in original).

The Court views the facts "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). But "to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* Accordingly, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012). This general rule "has been extended to self-serving deposition testimony." *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 530 (W.D. Pa. 2021) (citing *Irving v. Chester Water Auth.*, 439 Fed. Appx. 125, 127 (3d Cir. 2011)). "At summary

---

[4] This Court has jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

judgment, the ultimate question is whether self-serving testimony, 'when considered in conjunction with other evidence, is sufficient for a rational factfinder to credit [the declarant's] testimony, in spite of the testimony's self-serving nature.'" *Id.* (quoting *Hanna v. Giant Eagle Inc.*, Civil Action No. 15-1009, 2017 WL 1194676, at *12 (W.D. Pa. Mar. 9, 2017)).

## IV. DISCUSSION

Defendants' Motion advances two arguments regarding Plaintiff's FLSA claim—a statute of limitations argument, and a substantive argument concerning the nature of Plaintiff's employment with Smart Foods. As explained herein, Defendants are entitled to summary judgment because Plaintiff's FLSA claim is barred by the applicable statute of limitations. Accordingly, the Court needs not—and does not—reach Defendant's outside salesperson argument.

### A. FLSA Willfulness Determination

FLSA claims are ordinarily subject to a two-year statute of limitations. 29 U.S.C. § 255(a). Claims arising from *willful* violations are subject to a three-year statute of limitations. *Id.* The limitations period as to each FLSA violation begins to run "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b); *see also Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 438 (D.N.J. 2001) ("[R]epeated failure to properly compensate employees for overtime are not treated as continuing violations but as repeated violations"); *Perloff v. SoMo Audience Corp.*, No. 219CV09172KSHCLW, 2020 WL 7183552, at *2 (D.N.J. Aug. 7, 2020) ("Courts have explicitly rejected the continuing violations theory in Fair Labor Standards Act and NJWHL cases."). The limitations period is tolled from the date of the Plaintiff's complaint. 29 U.S.C. § 256. In sum, Plaintiff can avoid summary judgment on Defendants' statute of limitations argument if there is a genuine factual dispute which, if resolved in Plaintiff's favor, would permit the conclusion that he could be entitled to relief for either a willful violation of the FLSA within three years of the date of his complaint—*i.e.*, on or after June 10, 2018—or any violation, willful or otherwise, within two years of the date of his complaint—*i.e.*, on or after June 10, 2019.

"[W]illfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.].'" *Stone v. Troy Construction, LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). To establish willfulness, a plaintiff need not show "egregiousness," *Stone*, 935 F.3d at 150, but a showing of at least "some degree of actual awareness is necessary," *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 126 (3d Cir. 2017). No such showing has been made here. Plaintiff stakes his willfulness argument on the fact that "Mr. Munoz only instituted a system to record employees' hours as of 2021." Opp. 11 (citing Munoz Dep. 57:2-8).

Defendants' failure to institute recordkeeping protocols until 2021, without more, demonstrates no "degree of actual awareness" of the requirements of the FLSA. In other words, Defendants' delay in instituting adequate recordkeeping "fail[s] to support more than an ordinary FLSA violation." *Liu v. Cheng Du 23 Inc.*, No. CV1712867ESCLW, 2022 WL 4217150, at *6

(D.N.J. Sept. 13, 2022). Plaintiff has identified no evidence regarding Defendants' willfulness and conceded during his deposition that he "never complained" to Defendant Munoz about his working conditions. Ramirez Dep. at 29:25 to 30:22; DSOMF ¶ 30.

Plaintiff has not set forth evidence sufficient to create a genuine dispute as to Defendants' willfulness regarding the alleged FLSA allegations. Accordingly, the Court applies the ordinary two-year statute of limitations.

### B.     Application of FLSA Statute of Limitations

In his complaint, Plaintiff alleged that Defendants' FLSA overtime violations persisted "[t]hroughout the relevant time period," which the Court interprets to cover the entirety of Plaintiff's alleged employment with Smart Foods. Compl. ¶ 42. Granting all inferences in the non-movant's favor, the Court therefore assumes for the purpose of resolving this Motion that Plaintiff's FLSA overtime claim applies to his final paycheck as a Smart Foods employee. Plaintiff can therefore avoid summary judgment on Defendants' statute of limitations argument if there exists a genuine dispute as to whether his employment continued later than June 10, 2019.

The movants—here, Defendants—bear the initial burden of establishing that Plaintiff's employment with Smart Foods ended prior to the limitations period and that no genuine dispute remains as to this timing. To meet their burden, Defendants relied on Sales Records reflecting payments to Plaintiff (or his alleged designees) through, but not later than, August of 2018, and on WhatsApp messages that appear to reflect a conversation in which Plaintiff confirms his intention to leave Smart Foods and "become independent," WhatsApp Transl. at 4, 7. The Court finds that these records, taken alone, are sufficient to establish to a rational trier of fact that Plaintiff's work for Smart Foods ended in 2018.

Defendants having met their initial burden, to survive summary judgment, Plaintiff needed only provide sufficient evidence such that a rational factfinder could determine that his version of events, in which he remained employed by Smart Foods into 2020, was true. Under Third Circuit precedent, that evidence needed to consist of something more than a conclusory self-serving affidavit and conclusory self-serving deposition testimony. *Gonzalez v. Sec'y of the Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012); *Irving v. Chester Water Auth.*, 439 Fed. Appx. 125, 127 (3d Cir. 2011). But this is exactly the type of testimony Plaintiff relied on: two conclusory paragraphs in his declaration in opposition to summary judgment, Ramirez Decl. ¶¶ 9-10 ("9. I did not quit or leave the company in the fall of 2018.... 10. I worked for Defendants until 2020"), and responses to three deposition questions, Ramirez Dep. 7:13-23 ("Q. Now, sir, you claim that you were employed by the defendants as an account manager from around 2004 through and including July of 2020. Are those dates accurate? A. Yes. Q. Was that continuous employment? A. Yes. Q. You had no breakage in employment during that time period, 2004 through and around July of 2020; is that correct? A. No.").

Plaintiff's Complaint appears to explain the lack of records available to establish his continued employment beyond 2018, alleging that "From the start of his employment until in or around October 2018"—the same time that Plaintiff sent a message to Munoz that he was going to become independent—"Plaintiff was paid his waged by check, with no accompanying paystub.

5

From in or around November 2018 until the end of his employment, Plaintiff was paid his wages entirely in cash, with no accompanying paystub." Compl. ¶¶ 33-34. But, accepting this explanation as true for summary judgment purposes, Plaintiff could have offered any other evidence in support of his continued employment into 2020. He did not testify on his own behalf as to his continued employment other than the conclusory statements replicated in this Opinion, and he took no opportunity to offer an alternative explanation for the WhatsApp messages exchanged between himself and Munoz. Nor did Plaintiff present testimony from any other witness to confirm his continued affiliation with Smart Foods—not from any manager, employee, customer, or supplier.

On the record before the Court, no rational factfinder could determine that Defendants' alleged FLSA violations against Plaintiff continued through June 10, 2019 because the record contains support only for the conclusion that Plaintiff's employment with Smart Foods ended in October of 2018. Defendants' motion for summary judgment as to the FLSA claim is **GRANTED**.[5]

### C. State Law Claims

Plaintiff's three remaining claims are state law claims arising under the NJWHL and the NJWPL. This Court's jurisdiction over these state law claims arose out of its original jurisdiction over the now-dismissed FLSA claim. *See* Compl. ¶ 3 ("The Court has supplemental jurisdiction over the claims arising under the NJWHL and NJWPL pursuant to 28 U.S.C. § 1367(a), in that the state law claims are so closely related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution."). "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a)] if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

> While a district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary, in the Third Circuit, the general approach is for a district court to hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction.

*Reiner v. Northumberland Cnt'y*, -- F. Supp. 3d --, 2024 WL 2216852 (M.D. Pa. May 15, 2024) (cleaned up). Because the only claim over which this Court had original jurisdiction has been dismissed, Plaintiff's state law claims are hereby **DISMISSED WITHOUT PREJUDICE**.

---

[5] Because the Court has granted summary judgment as to the FLSA claim, it needs not, and does not, address Defendants' alternative argument that Plaintiff was an FLSA-exempt outside sales representative.

6

## V.      CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's FLSA claim. Plaintiff's FLSA claim is **DISMISSED**. Plaintiff's remaining state law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3). An appropriate order follows.

**DATE:** December 23, 2024

WILLIAM J. MARTINI, U.S.D.J.